| | | |
|---|---|---|
| STUAT KASIN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 11), and Defendant's Motion for Summary Judgment, (Doc. No. 12), and Memorandum in Support, (Doc. No. 13). This matter is ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds the Commissioner's decision to deny Plaintiff Social Security disability benefits prior to May 2, 2013 to be supported by substantial evidence. Accordingly, the undersigned will **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** the Commissioner's Motion for Summary Judgment, and **AFFIRM** the Commissioner's decision.

## I.     BACKGROUND

### A.     Procedural Background

Plaintiff Stuart Kasin (Plaintiff) seeks judicial review of Defendant's denial of his Social Security claim. (Doc. No. 1). On September 1, 2011, Plaintiff applied to the Social Security Administration for a period of disability, Social Security disability insurance benefits, and Supplemental Security Income, alleging disability beginning October 1, 2009, (Doc. No. 10-3),

as a result of Parkinson's disease and severe depression. (R. 65.)[1] Plaintiff's claim was denied initially and then again on reconsideration. (Doc. No. 10-13).

Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held April 8, 2013. (Id.). On May 2, 2013, the ALJ issued an opinion denying Plaintiff's claim for the period of October 1, 2009, through April 8, 2013. (Id.). On August 16, 2013, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision—rendering the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff filed this action on September 24, 2013; and the parties' cross-motions for summary judgment are ripe for this Court's consideration.

B.    Factual Background

The questions before the ALJ were the following: (1) whether the claimant was disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act at any time between October 1, 2009, when Plaintiff's disabling conditions allegedly commenced, and the date of the ALJ's decision on May 2, 2013; and, (2) whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. (Doc. No. 10-3). As to the second question, the ALJ determined that "the claimant's earnings record show[ed] that the claimant [had] acquired sufficient quarters of coverage to remain insured through December 31, 2013." (Id. at 1). Therefore, "the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (Id.); Sections 216(i) and 223 of the Social Security Act.

---

1 For ease of discussion, citations to the administrative record will be referenced as "(R. [page number].)"

To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act.  <u>Felton-Miller v. Astrue</u>, 459 Fed.Appx. 226, 228 (4th Cir. 2011).  The ALJ concluded that Plaintiff was not under a disability at any time from October 1, 2009, through the date of his decision, May 2, 2013.  (Doc. No. 10-3 at 1).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a) (2012).  The five steps are:

(1) whether claimant is currently engaging in substantial gainful activity—if so, the Court enters a finding of non-disability and ends the inquiry;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if not, the Court enters a finding of non-disability and ends the inquiry;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if so, the Court presumes disability and awards benefits;

(4) whether claimant has the residual functional capacity (RFC) to perform his past relevant work—if so, the Court enters a finding of non-disability; and

(5) whether, considering claimant's RFC, age, education, and work experience, he can make an adjustment to other work—if so, the Court enters a finding of non-disability.

<u>See</u> 20 C.F.R. § 404.1520(a)(4)(i-v).  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Doc. No. 10-3 at 13).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since October 1, 2009, the alleged disability onset date.  (<u>Id.</u> at 3).  At the second

step, the ALJ found that Plaintiff's possible/history of Parkinson's disease or essential tremor, history of carpal tunnel syndrome, s/p remote history thyroidectomy with hypothyroidism, s/p cholecystectomy, and history of insomnia, depression, and anxiety constituted severe impairments. (Id.). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (Id.).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to do the following:

> perform light work[2] . . . except he can occasionally climb stairs and never climb ladders. He can occasionally balance. He can frequently, but not constantly, handle, finger, and feel. The claimant should avoid concentrated exposure to hazards. He is limited to simple, routine repetitive tasks in a stable environment at a nonproduction pace with occasional interpersonal interaction and public contact.

(Id. at 5). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Id.) The ALJ further noted that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 9602p, 96-5p, 96-6p and 06-3p." (Id.).

After consideration of the evidence, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." (Id. at 6). Consequently, even though the ALJ determined at the fourth step that the claimant was unable to perform any past relevant work, the

---

2 Lift and carry 20 pounds occasionally and 10 pounds frequently, as defined in 20 CFR 404.1567(b) and 416.967(b).

ALJ found, at the final step, "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. . . ." (Id. at 13). The ALJ agreed with the testifying vocational expert that, given all the claimant's limitations, the claimant could still perform the requirements of representative occupations such as library page/assistant, linen grader, and office assistant. (Id. at 14). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between October 1, 2009, and the date of his decision on May 2, 2013. (Id.).

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). As the Social Security Act provides, if the Commissioner's findings as to any fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . ."). "Substantial evidence" has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On Appeal to this Court, the Plaintiff argues that the ALJ erred as a matter of law in denying his claim on three grounds: (1) the ALJ improperly evaluated Plaintiff's impairments, and (2) the ALJ improperly evaluated the evidence in the record. (Doc. No. 11). The Court reviews these arguments in turn.

### A. ALJ's Evaluation of Plaintiff's Impairments

Plaintiff claims that the ALJ improperly evaluated his impairments. (Doc. No. 11 at 2-4). The ALJ found that the claimant had the following severe impairments: "possible/history of Parkinson's disease or essential tremor, history of carpal tunnel syndrome, s/p remote history thyroidectomy with hypothyroidism, s/p cholecystectomy, history of insomnia, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c))." (Doc. No. 10-3 at 3). However, the ALJ also determined that "the claimant's physical impairments [did] not manifest the signs, symptoms, and findings required to meet any of the Listings in 20 CFR 404, Appendix 1 to Subpart P," and "[t]he severity of the claimant's mental impairments, considered singly and in combination, [did] not meet or medically equal the criteria of listings 12.04 and 12.06." (Id. at 4).

### 1. Neurological Condition

Plaintiff notes that he was born with early-onset Parkinson's, an impairment that has affected his professional mobility, stamina, ability to eat, ability to maintain friendships, and mental well-being. (Doc. No. 11 at 2). At the hearing before the ALJ on April 8, 2013, the claimant testified that his Parkinson's contributed to the loss of his job as a stockbroker. (Doc. No. 10-3 at 5). He also stated that he could only lift objects less than 10 pounds and could only slowly and painfully walk half a city block. (Id. at 6). He further testified that his symptoms were getting worse, rated his pain from 6.5 to 8.5 on a pain scale, and claimed that if he sits on his computer for 15 minutes, his pain escalates to an 8, after which Advil partially alleviates his pain, and he may return to work. (Id.).

The Fourth Circuit established a two-pronged test for the ALJ to evaluate a plaintiff's credibility regarding subjective accounts of pain. Craig v. Chater, 76 F.3d 585, 594-96 (4th Cir. 1996). First, there must be "objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." Id. at 594 (internal citations omitted) (emphasis in original). "It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Id. at 595 (citations omitted) (emphasis in original). This evaluation must not only account for:

> the claimant's statements about [his] pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . ; and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citations omitted). This "other relevant evidence" can include failure, without good reason, to follow prescribed treatment, 20 CFR §§ 404.1530(b), 416.930(b), and a

symptom which is controllable with medication or treatment is not disabling. <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986).

Dr. Lori Schneider evaluated claimant on March 19, 2012, and observed, among other things, 5/5 motor strength, no cogwheeling rigidity or bradykinesia, a normal gait, a mild decrease in dexterity with both hands, a mild postural and action tremor in both extremities, and a mild vocal tremor. (Doc. 10-3 at 8); (R. 470-472.) On August 27, 2012, Dr. Schneider reevaluated the claimant and noted only minor changes (Doc. 10-3 at 9); (R. 107-108.) Based on claimant's medical records and their own evaluations, State Agency medical consultants found claimant "not disabled." (Doc. 10-3 at 13); (R. 118.); <u>SSR</u> 96-6p (in the absence of a functional capacities evaluation completed by a treating physician, an ALJ may give substantial weight to the findings of the State agency medical consultants as experts in the evaluation of the medical issues in disability claims under the Social Security Act). Finally, claimant had received some relief from various medications. (Doc. 10-3 at 7-8).

2. Gastrointestinal Disorders

The ALJ found claimant's past cholecystectomy to be a severe impairment. (Doc. No. 10-3 at 3). Additionally, claimant testified at the hearing that his stomach issues progressed to where he was using the bathroom 5 to 6 times in the morning at work. (<u>Id.</u> at 5). However, in April and May 2012 claimant underwent an extensive gastrointestinal workup, with the following results: there was no organic cause for his abdominal pain; his examination was extremely benign; he did not appear ill; he was not jaundiced; and he had no right upper quadrant tenderness. (<u>Id.</u> at 8) (R. 478-81.). Following the examination, it was determined that the claimant must have a psychological cause for his pain. (<u>Id.</u> at 8) (R. 478-81.)

3. Mental Health Impairments

Plaintiff testified at the hearing that he worked as a stockbroker until he had a mental breakdown in March 2009. (Id.). He also noted that he has suffered from anxiety, has had suicidal ideation,[3] has developed obsessive-compulsive disorder (OCD), has struggled finding a drug for his depression, and has recently started Ludox for his OCD (Id. at 5-6). Considering the evidence in the record, the ALJ found that:

> [t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[4]

(Id. at 4).

Accordingly, the ALJ found that claimant had only mild restrictions in activities of daily living, to wit: he admitted being the sole caretaker for his disabled son, (Id.); (R. 969), he reported he was independent in all of his activities of daily living and denied any difficulty driving a car, (Id.); (R. 470), and he reported running three to four times a week from 2008 to 2010, (Id.); (R. 411, 463), as well as exercising more in 2011 and 2012, (Id.); (see R. 1086-1157.) The ALJ found that claimant had moderate difficulties in

---

3 "On June 12, [2012] he was admitted to CMC overnight after taking an overdose of Propranolol." (Doc. 10-3 at 9).
4 "A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." (Doc. 10-3 at 4).

social functioning. (Id.). He visited his aunt three times a week, (Id.); (R. 975), and reported no social isolation in December 2012. (Id.); (see R. 1086-1157.)

Furthermore, the ALJ found that claimant had moderate difficulties with regard to concentration, persistence, or pace. (Id.). As previously noted, claimant engaged in a great deal of childcare as the primary caretaker for his disabled son—demonstrating "a baseline ability to concentrate and persist on tasks." (Id.). Additionally, after numerous hospital visits, there were no recorded problems with his attention span, recent and remote memory, or concentration. (Id.); (see R. 477-692); (see also R. 966-1008.) Finally, the claimant has experienced no episodes of decompensation, which have been of extended duration. (Id.). Therefore, the ALJ determined that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." (Id.). Notably, claimant has neither been compliant with recommended treatment nor engaged in regular medication management or individual therapy. (Id. at 11).[5]

4.  Insomnia

Claimant testified that he sleeps two to three hours a night. (Id. at 6). However, a treating physician noted that his "insomnia/GAD was secondary to his stressful family situation." (Id. at 9). Furthermore, the record showed that claimant had cancelled or no-showed for treatments. (Id.); (R. 1068.) Finally, his treating physician's notes show no persistent and

---

5 "Claimant submitted an e-mail transcript between himself and www.samaritans.org, which documents his seeking therapy via e-mail for suicidal ideation." (Doc. 10-3 at 12). However, "[t]he emails cannot be considered a substitute for mental health treatment." (Id.).

unrelenting problems with insomnia, no treatment with a sleep clinic, and no diagnosis of sleep apnea. (Id. at 11).

B.    ALJ's Evaluation of the Evidence in the Record

Plaintiff claims that the ALJ erred in his evaluation of the record by doing the following: considering claimant's exercising/running in determining his physical health, focusing on claimant's past legal battle instead of his many illnesses, and by improperly discounting particular medical opinions in the record in determining his need for disability income. (Doc. 11 at 3-4).

1.    ALJ Bias

The ALJ properly considered claimant's history of exercising/running and his past legal battle. The ALJ considered claimant's history of exercising/running in determining the severity of the claimant's mental impairments, not his physical impairments. The ALJ's findings were consistent with a determination that claimant had mild restrictions in daily living activities. The ALJ also found that the evidentiary record simply did not support the plaintiff's claims as to the severity of his mental impairments. (Doc. 10-3 at 9). In so finding, the ALJ noted that, although the claimant's history of embezzlement had nothing to do with his mental or physical condition, such history spoke to his character for truthfulness. (Id.); Berger v. Astrue, 516 F.3d 539, 545-46 (7th Cir. 2008) (claimant's failure to report income on his income taxes may justify a more skeptical view of his testimony). The use of such consideration by the ALJ was properly limited to overall credibility, and there is no evidence to suggest it affected the ALJ's consideration of the medical evidence.

2.    Medical Opinions

The ALJ did not improperly discount any medical opinions in the record. The record contained a letter drafted by claimant's treating physician that largely reiterated claimant's subjective complaints, Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (ALJ correctly afforded treating physician's medical opinion little weight given the physician based his opinion on the claimant's subjective complaints without sufficient evidence to substantiate claimant's claims); did not correspond with the physician's own treatment notes, SSR 96-2p (ALJ may deny controlling weight to treating physician's opinion on issues relating to the nature and severity of claimant's impairments if the opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence in the record); and vaguely stated that the claimant "has applied for Social Security Disability Income of which I am signing off on for the above reasons stated" (Doc. 10-3 at 11); (R. 965); (internal quotations omitted); SSR 96-5p ("treating source opinions on issues reserved to the Commissioner are never entitled controlling weight or special significance").

Similarly, the ALJ properly gave no weight to the portion of consultative examiner Dr. Schneider's opinion that stated "claimant had difficulty sitting more than 10 minutes at a time due to rigidity in his legs" because such rigidity was not observed at either examination and mirrored the claimant's subjective reports. (Doc. 10-3 at 9). Finally, the ALJ also properly gave chiropractor Toplansky's letter no weight as she was not an "accepted medical source and there [was] no corroborating evidence for her other medical source opinion," (Doc. 10-3 at 12); (R. 1159-60); (internal quotations omitted); Lee v. Sullivan, 945 F.2d 687, 691 (4th Cir. 1991) (chiropractor's medical assessment only qualified as a layman's opinion), in addition to finding claimant's father's and friend's letters unsupported by the record. (Doc. 10-3 at 13).

## IV.     CONCLUSION

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

**IT IS, THEREFORE, ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;

2.    Defendant's Motion for Summary Judgment, (Doc. No. 12), is **GRANTED**; and

3.    The Clerk of Court is directed to close this case.

Signed: July 28, 2014

Robert J. Conrad, Jr.
United States District Judge